**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PHILIP DELPALAZZO**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-5682-KSM** |
| **HORIZON GROUP HOLDING, LLC,** | |
| Defendant. | |

**MEMORANDUM**

**Marston, J.**                                                                    **June 2, 2020**

Plaintiff Philip DelPalazzo sues his former employer, Defendant Horizon Group
Holdings, LLC, for breach of contract, violation of the public policy exception to the Delaware at
will employment doctrine, and for punitive damages.  Horizon brings this motion to dismiss the
amended complaint in its entirety.  For the reasons discussed below, the Court grants Horizon's
motion to dismiss as to the breach of contract and punitive damages claims, but denies the
motion as to DelPalazzo's claim for violation of the public policy exception to the at will
employment doctrine.

### I.      *Factual Background*

Accepting all allegations in the amended complaint as true, the relevant facts are as
follows.  Philip DelPalazzo worked as a sales representative for eight years with Horizon, a
company that provides heating, air conditioning, and plumbing products and services to
customers in Delaware, Pennsylvania, and New Jersey.  (Doc. No. 6 at ¶¶ 6, 8.)  During that
time, he earned the distinction of top sales representative and produced over $30 million in

revenue for the company.  (*Id.* at ¶ 10.)  In April 2018, Horizon offered DelPalazzo an

employment agreement as an incentive to continue working for the company.   (*Id.* at ¶¶ 12–13.)

Under the agreement, Horizon agreed to pay DelPalazzo $600,000 in four installments over the

course of two years, so long as he met two conditions:  (1) DelPalazzo had to remain employed

by Horizon, and (2) he had to sell a minimum of $4,500,000 per year in revenue for installations

of new equipment with "discounting of not less than 10%."  (Doc. No. 6-2 at p. 1.)  Although the

agreement referred to these payments as a "retention package," it also stated that his

"employment is for an indefinite period and is terminable at the will of either the Company or

you, with or without cause at any time, subject only to such limitations as may be imposed by

law." (*Id.*)  DelPalazzo accepted the agreement and continued working for Horizon without

incident for the first year after its execution.

As a sales representative, DelPalazzo relied on sales leads from Horizon to find

customers who were interested in buying new equipment.  (Doc. No. 6 at ¶ 27.)  In June 2019,

DelPalazzo noticed that Horizon was giving him "far fewer leads" than he had received in

previous months, and as a result, he generated $200,000 less in revenue that month than he had

the month before.  (*Id.* ¶¶ 29, 36.)   DelPalazzo approached his sales manager, Adli Alami, who

stated that he was giving leads to other representatives who he believed would generate more

sales.  (*Id.* at ¶ 31.)  DelPalazzo told Alami about his agreement with Horizon and that he was

required to generate a minimum of $4,500,000 in revenue annually with discounting of no more

than 10% on each sale.  (*Id.* at ¶ 34.)  Alami replied that he did not care about the discount rate or

DelPalazzo's agreement.  (*Id.* at ¶ 35.)

Around the same time, DelPalazzo claims that he was growing "concerned with

Horizon's policies and practices."  (*Id.* at ¶ 37.)  DelPalazzo believed that "Horizon instructed its

2

service technicians to deliberately inflate estimated repairs costs to customers, to induce those customers to purchase new heating and/or air conditioning units that they didn't need." (*Id.* at ¶ 38.) He was also concerned about "the ethical issues of selling the same product to different customers at grossly different prices." (*Id.* at ¶ 41.) DelPalazzo believed that the representatives discounting jobs more than 10% were the same representatives convincing customers to purchase new heating and air conditioning units that they did not need by inflating repair estimates. (*Id.* at ¶ 44.) Given these concerns, DelPalazzo "began asking questions" about Horizon's policies and practices. (*Id.* at ¶ 40.)

In July 2019, DelPalazzo spoke with Horizon's human resources representative, Kathryn Hopkins, about the decrease in sales leads. (*Id.* at ¶ 43.) Hopkins recorded DelPalazzo's complaint, and later that day, DelPalazzo received a message from the Vice President of Sales, Troy Rainsberg, who scheduled a meeting for the next morning. (*Id.* at ¶¶ 45, 47.) DelPalazzo alleges that at the meeting, Rainsberg told him "we will accept your resignation effective today." (*Id.* at ¶¶ 51, 53.) He then gave DelPalazzo a resignation form to sign. (*Id.* at ¶ 54.) DelPalazzo told Rainsberg and the other managers attending the meeting that he had not come to the meeting to resign, but "the three managers grew increasingly hostile and implicitly threatening," until DelPalazzo "felt that he had no choice other than to sign the form." (*Id.* at ¶ 57.) DelPalazzo alleges that he was forced to resign because his "questions about sales practices implicated certain consumer protection laws." (*Id.* at ¶ 49.) And "[u]pon raising his concerns, [DelPalazzo] was fired the next day." (*Id.* at ¶ 79.)

After his forced resignation, DelPalazzo filed this lawsuit bringing claims for breach of contract, for violation of the public policy exception to Delaware's at will employment doctrine, and for punitive damages. (*Id.*) Horizon filed a motion to dismiss the amended complaint in its

entirety.  (Doc. No. 7.)

## II.    *Discussion*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

In reviewing a motion to dismiss, the court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations.  *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017).  "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  "However an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *Id.* (quotation marks omitted and alterations accepted); *see also Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (explaining that the court "may also consider documents attached to the complaint").

DelPalazzo brings claims for breach of contract, violation of the public policy exception to the Delaware at will employment doctrine, and punitive damages.  Horizon contends that those claims fail as a matter of law because (1) DelPalazzo has not pled facts showing that Horizon breached an obligation under the employment agreement; (2) Delaware does not recognize a public policy exception to at will employment; and (3) punitive damages are not

available for breach of an employment contract.  We address each argument in turn.

    **A.**    ***Breach of Contract Claim***

In Count I, DelPalazzo claims that Horizon "materially breached" the parties'
employment agreement when the company failed to provide him with sufficient sales leads,
demanded that he discount his sales by more than 10%, and terminated him without cause.  (Doc.
No. 6 at ¶ 69.)  Under Delaware law, a plaintiff pleading breach of contract must allege: (1) the
existence of a contract, whether express or implied; (2) the breach of an obligation imposed by
that contract; and (3) damages to the plaintiff as a result of that breach.  *VLIW Tech., LLC v.
Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

Neither party disputes that the employment agreement is a valid contract and governs
their relationship.  (*See* Doc. No. 6 at ¶ 66 (claiming that the employment agreement is a "valid
and enforceable contract").)  The agreement also states that it "constitutes the entire agreement
between the parties pertaining to the subject matter hereof and supersedes all prior
understandings, negotiations and discussions, whether oral or written, with regard thereto."
(Doc. No. 6-2 at p. 2.)  Horizon argues that the breach of contract claim fails because under that
agreement, it did not have a contractual duty to give DelPalazzo sales leads, DelPalazzo has not
pled facts tending to show that Horizon demanded that he discount greater than 10% of his sales,
and the agreement allowed Horizon to terminate DelPalazzo without cause.

 "When interpreting a contract, the Court will give priority to the parties' intentions as
reflected in the four corners of the agreement."  *GMG Capital Invs., LLC v. Athenian Venture
Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012); *see also Paul v. Deloitte & Touche, LLP*, 974
A.2d 140, 145 (Del. 2009) ("We start by looking to the four corners of the contract to conclude
whether the intent of the parties can be determined from its express language.").  "In upholding

the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein." *GMC Capital Invs., LLC*, 36 A.3d at 779.  The court will look beyond the language of the contract to ascertain the parties' intentions only when the contract is ambiguous. *Id.* at 780.  When a contract is unambiguous, however, "the parole evidence rule bars the admission of evidence from outside the contract's four corners to vary or contradict that unambiguous language." *Id.* at 783.

First, Horizon argues that under the employment agreement it did not have a contractual obligation to provide DelPalazzo with sales leads.  (Doc. No. 7-1 at p. 10.)  DelPalazzo does not identify any obligation, express or implied, in the employment agreement, that Horizon breached by giving him less sales leads, and we could find no such obligation in the terms of the agreement.  Instead, DelPalazzo argues that he needed sales leads from Horizon to meet his own obligations under the contract and that he could not generate the leads on his own.  (Doc. No. 8 at p. 8.)  But even accepting those facts are true, they do not show that Horizon had a contractual obligation to give DelPalazzo sales leads.  Because DelPalazzo does not identify any contractual obligation that was breached, his breach of contract claim fails on this issue.  *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006) (dismissing breach of contract claim because the amended complaint did not identify an express or implied contractual obligation that was breached).

Second, DelPalazzo argues that Horizon breached the employment agreement when it required that he discount sales by more than 10%.  (*Id.*)  Once again, DelPalazzo has not identified a contractual provision that Horizon allegedly breached.  In addition, DelPalazzo has pled no facts that show Horizon required him to discount sales.  At most, DelPalazzo implies that Horizon's sales manager was not giving him as many leads because he would not discount sales

6

by more than 10%, making it difficult for DelPalazzo to meet his own obligations under the contract.   But those facts do not show either that Horizon required DelPalazzo to discount his sales by more than 10% or that Horizon had a contractual obligation to provide him with sales leads regardless of his discount rate.   For those reasons, DelPalazzo's breach of contract claim fails on this issue as well.   *See Wal-Mart Stores, Inc.*, 901 A.2d at 116.

Last, DelPalazzo argues that Horizon breached the employment agreement when it terminated his employment without cause.   (Doc. No. 8 at pp. 8–9.)   He asserts that the agreement "required that Plaintiff be continually employed by Horizon Group Holding" and that he was "not an at-will employee of Horizon."   (*Id.*)   This interpretation is at odds with the terms of the employment agreement, which does not set a fixed term of employment.   *See Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 102 (Del. 1992) (explaining that there is "a heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite").

Although the employment agreement includes a schedule of payments that lasts for two years, DelPalazzo could only receive later payments if he remained employed at the company — suggesting that he could leave before the end of the two-year period and forego the remaining payments.   (Doc. No. 6-2 at p. 1.)   In addition, the contract states that the employment relationship is "at the will" of the parties and may be terminated by either party "at any time" and "with or without cause."   (*Id.*)   *See Paul*, 974 A.2d at 147 (finding that the employee's status with the employer "was indefinite and not, as [he] claims, for any definable or fixed term" because his employment contract allowed him to be fired with or without cause, subject to a few limitations); *see also Haney v. Laub*, 312 A.2d 330, 332 (Del. Super. Ct. 1973) (explaining that a "hiring for an indeterminate period is a hiring at will and, consequently, is terminable at the will

of either party with or without cause"). Because Horizon was legally authorized to fire

DelPalazzo without cause, his breach of contract claim fails on this issue as well. *See Freebery*

*v. Coons*, 589 F. Supp. 2d 409, 422–23 (D. Del. 2008) (finding that the plaintiff was "an at-will

employee who could be terminated without cause," and "because Defendants were legally

entitled to fire Plaintiff, they did not breach his employment contract when they did so"); *cf.*

*Worbetz v. Ward N.A., Inc.*, 54 F. App'x 526, 532 (3d Cir. 2002) (concluding that the former

employee's contract stated he was an at will employee, and therefore, under New Jersey law,

"could be terminated with or without cause").

Because DelPalazzo has not identified any contractual obligations that Horizon breached,

he has failed to state a claim for breach of contract, and we will dismiss Count I of the amended

complaint.

### B.   *Violation of the Public Policy Exception*

In Count II, DelPalazzo claims that "[i]n the alternative, should Plaintiff be deemed an at

will employee, Plaintiff's termination was a violation of the public policy exception to the at will

employment doctrine." (Doc. No. 6 at ¶ 74.) As discussed above, DelPalazzo was an at will

employee because the employment agreement did not create a fixed term of employment. *See*

*Merrill*, 606 A.2d at 102. He claims that Horizon breached the public policy exception to the at

will employment doctrine when it fired him for questioning Horizon's sales practices, which

DelPalazzo alleges violated the Delaware Consumer Fraud Statute, 6 Del. Code Ann. § 2513.

(*Id.* at ¶¶ 75, 79.) Horizon argues that this claim must be dismissed because the "Delaware

Supreme Court has *never* recognized a public policy exception to an employer's ability to

dismiss an at-will employee."[1] (Doc. No. 7-1 at p. 17.)

---

[1] Horizon also argues, in the alternative, that if we were to apply "Pennsylvania, rather than Delaware law to this matter, Plaintiff would still not be entitled to relief." (Doc. No. 7-1 at p. 17.) But we agree with the parties

In Delaware, the scope of the at will employment doctrine is broad and "generally permits the dismissal of employees without cause and regardless of motive." *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 437 (Del. 1996). "But the doctrine is not entirely unfettered, and courts have demonstrated a willingness to impose constraints on an expansive interpretation of employers' prerogatives under at will employment contracts." *Paolella v. Browning-Ferris, Inc.*, 158 F.3d 183, 190 (3d Cir. 1998) (quotation marks and alterations omitted). Contrary to Horizon's assertions, Delaware courts have recognized "a limited implied covenant of good faith and fair dealing as an exception to the harshness of the employment at-will doctrine." *Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000). There are four categories of actionable claims for violation of the covenant, including a claim that "the termination violated public policy."[2] *Id.*; *see also Schuster*, 775 A.2d at 1035.

Under this public policy exception, the employee must show that he was fired for

---

that Delaware, not Pennsylvania, law governs DelPalazzo's claims under the choice of law provision in the employment contract. (*See* Doc. No. 6-2 at p. 2 ("This letter will be governed by and construed in accordance with the law of the State of Delaware without regard to conflict or choice of law provisions thereof.").) *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) ("A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state," and "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them.").

[2] Horizon cites two cases from the District of Delaware for the proposition that the "Delaware Supreme Court has *never* recognized a public policy exception to an employer's ability to dismiss an at-will employee." (Doc. No. 7-1 at p. 17.) *See Williams v. Caruso*, 966 F. Supp. 287 (D. Del. 1997); *Finch v. Hercules, Inc.*, 809 F. Supp. 309 (D. Del. 1992). We are not bound by the holdings of other district courts. *Holland v. Holt*, 409 F. App'x. 494, 497 (3d Cir. 2010) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quotation marks omitted)). And we find *Finch* and *Williams* inapplicable here. In *Finch*, the district court was tasked with anticipating whether the Supreme Court of Delaware would recognize the public policy exception because at the time the Delaware Supreme Court had not addressed the issue. 809 F. Supp. at 311–12. Since *Finch* was decided, however, the Delaware Supreme Court has recognized the public policy exception to the at will employment doctrine in at least three opinions. *See Schuster v. Derocili*, 775 A.2d 1029, 1035 (Del. 2001) (explaining that in *E.I. DuPont de Nemours and Company*, the Delaware Supreme Court "catalogued actionable claims that could be maintained for breaches of an implied covenant of good faith and fair dealing into four categories," including "violations of public policy"); *Lord*, 748 A.2d at 400 (same); *E.I. DuPont de Nemours & Co.*, 679 A.2d at 442 (analyzing plaintiff's claims under "the public policy category"). We are equally unpersuaded by *Williams*, which was decided before *Schuster* and *Lord* and relied on the reasoning in *Finch*. *See Williams*, 966 F. Supp. at 292; *see also Schuster*, 775 A.2d at 1034–35 (distinguishing *Finch* because it was decided before the Delaware Supreme Court addressed the public policy exception and noting that *Williams* "rel[ied] on the rationale in *Finch*").

engaging in conduct that implicates a protected "public interest recognized by some legislative, administrative or judicial authority" and that at the time, the employee occupied "a position with responsibility for advancing or sustaining that particular interest."  *Lord*, 748 A.2d at 401 (quotation marks omitted); *see also Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 586 (Del. Ct. Ch. 1994).   It is not enough for an employee to "uncover and blow the whistle on questionable internal financial and business practices."  *E.I. DuPont de Nemours & Co.*, 679 A.2d at 442.  Instead, the employee must point to "some illegal act by the employer."  *Paolella*, 158 F.3d at 191 (holding that the public policy exception applied where the employee questioned the employer's fraudulent billing scheme and was a sales manager at the time of the allegedly unlawful practices).

DelPalazzo alleges that Horizon encouraged its employees to lie about the estimated cost of repairing older units to "induce those customers to purchase new heating and/or air conditioning units that they didn't need."  (Doc. No. 6 at ¶¶ 38, 77.)   These practices, DelPalazzo claims, violated "fraud and consumer protection laws, such as 6 Del. Code Ann. § 2513 and its criminal enforcement pursuant to 29 Del. C. § 2520(a)(4)."[3]  (*Id.* at ¶ 79.) DelPalazzo was a sales representative charged with selling "residential heating and air conditioning units directly to residential customers in Delaware, Pennsylvania, and New Jersey," suggesting that he was charged with quoting truthful prices for repairs and sales to customers and ensuring they were not tricked into buying units that they did not need.  (*Id.* at ¶¶ 6, 8.)  Taking those facts as true, DelPalazzo has sufficiently alleged that he was terminated for questioning a business practice that was in "violation of a specific articulated public policy" recognized by

---

[3] Section 2513 prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation . . . with intent that others rely upon such [deception], in connection with the sale, lease or advertisement of any merchandise."  6 Del. Code Ann. § 2513(a).

legislative authority and that he was in a "position with responsibility for that particular interest." *See Paolella*, 158 F.3d at 191 (finding that a sales manager was in a position of responsibility for employer's fraudulent billing practices because the manager negotiated contracts with clients).

Horizon asserts that DelPalazzo has not shown "a causal relation between the alleged public policy exception and his purported termination" because he "*does not allege* that he actually reported this allegation to Horizon." (Doc. No. 7-1 at p. 23; *see also* Doc. No. 9 at pp. 8–10.) Although DelPalazzo's amended complaint is vague about how and to whom he reported his concerns about consumer protection, he alleges that he "began asking questions about Horizon's policies and practices" related to the allegedly fraudulent practices. (Doc. No. 6 at ¶ 40.) And although DelPalazzo does not detail his conversation with Horizon's Human Resources agent, he alleges that he filed a complaint with her and that upon "raising his concerns to Horizon, Plaintiff was fired the next day." (*Id.* at ¶ 79.) Broadly construing the complaint, as we must at this early stage in the litigation, we find that DelPalazzo has alleged sufficient facts regarding a claim for violation of the public policy exception to the at will employment doctrine to survive Horizon's motion to dismiss as to Count II of the amended complaint.[4]

### C.    *Claim for Punitive Damages*

Last, DelPalazzo brings a claim for punitive damages. Horizon argues that DelPalazzo is not entitled to punitive damages because the "Delaware Supreme Court has held that 'punitive damages are not available for any breach of employment contract.'" (Doc. No. 7-1 at p. 25.) And even if DelPalazzo has pled facts showing that Horizon fraudulently pressured customers

---

[4] Ultimately it may be difficult for DelPalazzo to show at trial that Horizon violated the public policy exception. For example, discovery may reveal that DelPalazzo did not report his concerns about Horizon's sales practices or that his concerns were not the reason for his allegedly forced resignation. Likewise, the facts could show that Horizon's conduct did not amount to a violation of Delaware's Consumer Fraud Statute or that DelPalazzo was not actually in a position with responsibility for the public policy interests protected by that statute. At this early stage, however, the Court determines that DelPalazzo has alleged sufficient facts to support a claim for violation of the public policy exception to the at will employment doctrine.

into purchasing new units when only repairs were needed, DelPalazzo has not brought a claim for "violations of the Delaware Consumer Fraud Act."  (Doc. No. 9 at pp. 10–11.)  DelPalazzo responds that he does not need to bring a claim for consumer fraud, but instead needs only to allege "specific conduct by the Defendant that amounts to an independent tort under Delaware law."  (Doc. No. 8 at p. 13.)

Horizon is correct that DelPalazzo cannot recover punitive damages for breach of the implied duty of good faith and fair dealing in an employment contract.  *See E.I. DuPont de Nemours & Co.*, 679 A.2d at 448 (holding that "punitive damages are not available for any breach of the employment agreement, which may be found by the jury upon retrial of [the plaintiff's] claims"); *see also Owens v. Connections Cmty. Support Programs, Inc.*, 840 F. Supp. 2d 791, 799 (D. Del. 2012) ("In *Pressman*, the Delaware Supreme Court held that breach of the implied covenant of good faith and fair dealing, in an employment relationship, was not an exception to the rule against punitive damages in breach of contract cases.").

Although the Delaware Supreme Court in *E.I. DuPont de Nemours and Company* found that punitive damages may be available for breach of contract when the "conduct also amounts independently to a tort," that exception is not triggered by the facts of this case.  679 A.2d at 445; *see also Owens*, 840 F.Supp.2d at 799 (explaining that under Delaware law "generally a plaintiff cannot recover punitive damages for breach of contract unless the conduct also amounts independently to a tort").  Even assuming that Horizon violated the Delaware Consumer Fraud Statute, the "conduct" at issue is not Horizon's fraudulent practices, but rather, Horizon's decision to fire DelPalazzo for questioning those allegedly fraudulent practices, in violation of the public policy exception.

Under Delaware law, the public policy exception to the at will employment doctrine

sounds in contract under the implied covenant of good faith and fair dealing.  *See Lord*, 748 A.2d at 401 (referring to the plaintiff's claim as "a breach of the covenant of good faith and fair dealing under the public policy category"); *see also Schuster*, 775 A.2d at 1032 (referring to the employee's claim for sexual harassment as "based upon a breach of the implied covenant of good faith and fair dealing exception to the at-will employment doctrine because her employer terminated her contrary to public policy").  Because wrongful termination sounds in contract under Delaware law, it does not amount to an independent tort for which punitive damages are available.  *See E.I. DuPont de Nemours & Co.*, 679 A.2d at 445 n.17 ("We need not decide the availability of punitive damages in an action sounding in tort based on these facts" because "[n]o claim based on a tort theory for malicious and fraudulent termination (assuming arguendo that there is such a tort) has been pleaded."); *cf. Woodson v. AMF Leisureland Ctrs., Inc.*, 842 F.2d 699, 702 (3d Cir. 1988) (analyzing similar cases from other jurisdictions and finding that Pennsylvania courts would allow punitive damages for plaintiff's wrongful discharge claim based on the public policy exception to at will employment in part because it had "been established that wrongful discharge is a tort, rather than breach of contract").

Because DelPalazzo's only remaining count is for breach of the implied covenant of good faith and fair dealing in his employment contract, his claim for punitive damages fails as a matter of law, and we will also dismiss Count III of the amended complaint.

## III.   *Conclusion*

For the reasons set forth above, the Court grants Horizon's motion to dismiss regarding DelPalazzo's claims for breach of contract and punitive damages and denies it as to DelPalazzo's claim for violation of the public policy exception to the at will employment doctrine.  DelPalazzo will be given an opportunity to amend his complaint.  *See Phillips v. County of Allegheny*, 515

F.3d 224, 245 (3d Cir. 2008) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such amendment would be inequitable or futile.").

An appropriate order follows.