IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP DELPALAZZO,  Plaintiff,  v.  HORIZON GROUP HOLDING, LLC,  Defendant. | CIVIL ACTION  NO. 19-5682-KSM |

MEMORANDUM

**Marston, J.**                                                    **October 31, 2022**

Plaintiff Philip DelPalazzo claims his former employer, Defendant Horizon Group Holdings, LLC, violated the public policy exception to Delaware's at will employment doctrine when the company forced him to resign after he complained about fraudulent practices by other employees.  (*See generally* Doc. No. 21.)  On March 28, 2022, the Court granted summary judgment in Horizon's favor on this claim after finding that "DelPalazzo had no responsibility under the relevant statutes or his job position for advancing or sustaining the public's interest in preventing consumer fraud, so he cannot rely on the public policy exception to Delaware's at will employment doctrine." (*See* Doc. No. 79 at 10; *see also* Doc. No. 80.)  DelPalazzo moves for reconsideration, arguing that:  (1) the Court's factual findings are incorrect because we viewed the evidence in the light most favorable to Horizon, and (2) the Court's legal analysis of Delaware's public policy exception conflicts with the Delaware Chancery Court's holding in *Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 585–89 (Del. Ch. 1994).

**I.**

"The purpose of a motion for reconsideration is to correct manifest errors of law or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). "Out of consideration for finality and judicial economy," courts grant motions for reconsideration "sparingly." *Hatcher v. SCM Grp. N. Am., Inc.*, 167 F. Supp. 3d 719, 728 (E.D. Pa. 2016) (citation omitted). The Third Circuit has identified three bases for altering an order: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice." *Allah v. Ricci*, 532 F. App'x 48, 51 (3d Cir. 2013) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)); *see also Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). DelPalazzo relies on the third basis, arguing that the Court committed clear errors of law by incorrectly applying the summary judgment standard and ignoring the Delaware Chancery Court's holding in *Shearin*. (*See* Doc. No. 81.)

**II.**

After reviewing our prior Memorandum[1] and considering DelPalazzo's arguments, we find no basis for vacating our prior ruling.

**A.**

First, DelPalazzo argues that the Court inappropriately "weighed the evidence presented by both parties." (*Id.* at 5.) As an example, he points to this statement by the Court:

> [E]ven assuming DelPalazzo has satisfied his burden as to the first prong and shown that his complaints implicate a recognized public policy, Horizon argues that DelPalazzo cannot show that he satisfies the second prong because as a sales representative, he did not occupy a "position with responsibility for advancing

---

[1] The Court assumes the reader's familiarity with the facts of this case and the Court's prior Memorandum.

or sustaining" Delaware's public interest in stopping consumer fraud. *We agree with Horizon.*

(Doc. No. 81-1 at 3–4 (quoting Doc. No. 79 at 6–7) (emphasis in original).) According to DelPalazzo, this quote shows the Court was "not fully persuaded that Plaintiff's conduct implicated a public policy interest" and must have "weighed the evidence" in Horizon's favor. (*Id.*) But DelPalazzo's concerns are unfounded. The Court gave no opinion on whether DelPalazzo's conduct implicated a public policy interest. Indeed, the quoted language shows that the Court *did not consider* the first element required for a claim based on the public policy exception, because DelPalazzo's claim failed under the second element. *See Lord v. Souder*, 748 A.2d 393, 401 (Del. 2000) (explaining that to state a claim under the public policy exception, an employee must show that he was fired for engaging in conduct that implicates a protected "public interest recognized by some legislative administrative or judicial authority" and that at the time, the employee occupied "a position with responsibility for advancing or sustaining that particular interest").

Neither should DelPalazzo read a malignant intent into the phrase, "We agree with Horizon." At summary judgment, Horizon argued that the evidence showed DelPalazzo, as a sales representative, was not responsible for reporting or policing consumer fraud committed by other employees. *That argument was correct*, as the Court's independent review and thorough discussion of the evidence showed.[2]

DelPalazzo also takes issue with our review of the evidence, arguing that the Court "identified its own analysis of Plaintiff's job responsibilities, and weighed the evidence against Plaintiff," when it concluded that as a sales representative, DelPalazzo "had no responsibility

---

[2] Indeed, later in his motion, DelPalazzo admits as much,stating, "Plaintiff does not argue that he was tasked with enforcing consumer fraud in Delaware." (Doc. No. 81-1 at 6.)

3

under the relevant statutes or his job position for advancing or sustaining the public's interest in preventing consumer fraud." (Doc. No. 81-1 at 4 (quoting Doc. No. 79 at 10).) To the contrary, the Court considered the *uncontroverted* evidence that DelPalazzo, as a sales representative, *was not responsible* for overseeing other employees or for handling consumer complaints about pricing. Indeed, the majority of the Court's Memorandum relies on DelPalazzo's own deposition testimony. (*See* Doc. No. 79 at 7–10.) And the Court received no evidence that contradicted that testimony.

DelPalazzo argues that the Court failed to consider an exhibit attached to DelPalazzo's declaration, which was "the Consent Order of the A.J. Perri Plumbing Company ('A.J. Perri') with the State of New Jersey." (Doc. No. 81-1 at 4.) He asserts that this document is relevant because it shows that A.J. Perri "misrepresented the condition of the consumer's plumbing in an effort to upsell a repair," and because DelPalazzo mentioned the consent order to his supervisor while discussing his concern that Horizon technicians were making similar misrepresentations. (*Id.* at 4–5.) Contrary to DelPalazzo's assertions, the Court did review this evidence before drafting the Summary Judgment Memorandum. The Memorandum does not discuss the evidence, however, because it has *no bearing* on the issue of DelPalazzo's job responsibilities.[3]

**B.**

Next, DelPalazzo argues that the Court's decision conflicts with Delaware law, citing *Shearin v. E.F. Hutton Group, Inc.* (Doc. No. 87-1 at 6.)

---

[3] DelPalazzo also points to the portion of his Declaration where he states he told his supervisor that he "knew the unethical practice of inflating the repair costs to induce sales of HVAC units at Horizon was continuing" and that "Horizon had instructed [technicians] to inflate repair costs." (Doc. No. 81-1 at 5.) Likewise, DelPalazzo testified that he believed he would be personally liable if he sold units that customers did not need. (*Id.*) But again, this evidence has nothing to do with whether DelPalazzo, as a sales representative, was responsible for policing and preventing consumer fraud—a fact he had to prove to succeed on his claim.

4

DelPalazzo's argument rests on a misreading of *Shearin*.  In that case, the attorney plaintiff served as legal counsel and vice president of E.F. Hutton Trust Company (the "Hutton Trust").  652 A.2d at 581.  The attorney alleged that she was fired because (1) "she refused to take actions that were ordered by her client that would have been actionable breaches of the law and the Delaware Lawyers' Rules of Professional Conduct," and (2) "she disclosed to the Hutton trust management her views of the inappropriateness of the way in which Hutton Trust facilitated Hutton Inc.'s business, which she claims to have a professional obligation to do."  *Id.* at 585.  The court, noting that "[n]o Delaware State court has been required to opine with respect to the existence . . . of implied terms in an at will employment contract between a corporation and a professional (licensed) person," analyzed the public policy exceptions adopted by other jurisdictions.  *Id.* at 587.  Among other things, the court emphasized a "limiting principle reflected in other judicial opinions:  employees who seek protection from firing on the basis that their actions were protected by a public policy, must assert a public interest recognized by some legislative, administrative or judicial authority, and the employee must occupy a position with responsibility for that a particular interest."  *Id.* at 587–88 (emphasis added).

The court then turned to the attorney's argument that "the action for which she was discharged was required (in the case of her communications to the Hutton Trust board) or prohibited (in the case of certain other conduct) by her obligation under the Delaware Rules of Professional Conduct."  *Id.* at 588.  The court found that as the Trust's legal counsel, the attorney had "primary responsibility for corporate compliance with legal obligations in connections with matters upon which she worked."  *Id.*  And it read compliance with the Rules of Professional Liability into her contract, explaining, "Every client of an attorney, including corporate employers, must be taken to understand that professional services rendered by that attorney . . .

5

must be fully in conformity with the Rules of Professional Conduct" and "[t]hat understanding must be deemed to be an implicit term of every lawyer's contract of retention or of employment." *Id.* Thus, in her position, the attorney "was prohibited, under Rule [of Professional Conduct] 1.2 from assisting her client, Hutton Trust, from engaging in any conduct she knew was 'criminal or fraudulent,'" and she was required, under Rule 1.13(b), "to report perceived breaches of legal duty to Hutton trust management." *Id.* Accordingly, she occupied a position with responsibility for a public interest.

As this summary shows, the court in *Shearin* found that one of the plaintiff's job responsibilities was compliance with the Rules of Professional Liability and that the actions and inactions that led to the plaintiff's termination were taken in conformity with those Rules. *Id.* By contrast, DelPalazzo has put forth no evidence that he, as a sales associate, was required, by statute or his employer, to monitor his fellow employees to ensure compliance with consumer fraud laws or to report their misconduct.[4]  The Court's ruling is not at odds with *Shearin.*

### III.

DelPalazzo has not shown that the Court committed a clear error of law or that reconsideration is otherwise warranted. The motion for reconsideration is denied. An appropriate order follows.

---

[4] DelPalazzo suggests that it was sufficient for him to show that he was "expected to conduct his work activities in good faith" and that he would "be subject to liability if he knowingly s[old] a heating or air conditioning unit to a consumer, knowing that was unnecessary." (Doc. No. 81-1 at 6.) But DelPalazzo did not allege that he was fired for refusing to sell units that he knew were unnecessary. Instead, he claimed that he was fired for reporting that other employees were selling units to customers who did not need them. (*See* Doc. No. 72 at 7 ("Plaintiff alleges that he was terminated after he spoke to his supervisors and made a complaint to the Human Resources department about the sales of units to customers who did not need new units."); *see also* Doc. No. 21 at ¶ 42 ("On information and belief, Horizon decided to end Plaintiff's employment because Plaintiff questioned the company's sales and service practices, which implicated certain consumer protection laws." (emphasis added)).)