**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PHILIP DELPALAZZO,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-5682-KSM** |
| **HORIZON GROUP HOLDING, LLC,** | |
| Defendant. | |

## <u>MEMORANDUM</u>

**Marston, J.**                                                    **October 31, 2022**

The Court previously ordered Plaintiff's counsel, Catherine Damavandi, Esq. and Todd Nurick, Esq., to show cause why sanctions should not issue against them for their improper conduct in this case.  (Doc. No. 50.)  The attorneys filed a written response (Doc. No. 54) and appeared before the Court at a show cause hearing on April 5, 2021.  For the reasons discussed below, the Court finds monetary sanctions appropriate in this case.

### I.   BACKGROUND

#### A.   *This Case is Plagued with Discovery Delays from the Beginning.*

This action was removed from the Court of Common Pleas of Philadelphia County to this Court on December 2, 2019.  (Doc. No. 1.)  Initially, it was assigned to the Honorable Paul S. Diamond, but on February 24, 2020, it was reassigned from Judge Diamond to the Honorable Karen Spencer Marston.  (Doc. No. 10.)  After an initial pretrial conference, the Court issued a Scheduling Order, which set a discovery deadline of May 22, 2020 and ordered counsel to participate in a settlement conference to be scheduled by the late Honorable Marilyn Heffley.

(Doc. No. 13 at p. 1.)  In June 2020, after the discovery deadline had passed,[1] the parties cancelled their settlement conference with Judge Heffley because they had not yet exchanged initial discovery.  Judge Heffley rescheduled the settlement conference for August 31, 2020, but a few days before it, the parties once again cancelled the conference because they remained in the early stages of discovery.  (Doc. Nos. 24 & 25.)

Judge Marston scheduled a telephone status conference for August 31, 2020 to address the delay in discovery and multiple postponements of the settlement conference.  During that conference, counsel for both parties stated that they needed to conduct additional discovery, including multiple depositions, and they indicated that they expected to finish discovery in October.  In light of this discussion, on September 1, 2020, the Court issued an Amended Scheduling Order, which extended the discovery deadline to November 16, 2020.  (Doc. No. 28 at p. 1.)  In that Order, the Court reiterated its verbal warning to the parties that "absent truly compelling reasons, **the Court will not extend the discovery deadlines again.**"  (*Id.* at 1 n.1.)

On October 2, 2020, Defendant moved to compel responses to its first set of interrogatories and first request for production of documents, noting that responses were due September 30, 2020, but Plaintiff had failed to provide any answers to the requests.  (Doc. No. 29.)  The Court granted that motion.  (Doc. No. 30.)

On November 19, 2020, after the new discovery deadline had passed, the parties attended a settlement conference with Judge Heffley, which was ultimately unsuccessful because the parties needed to conduct additional discovery, including the depositions of Plaintiff Philip DelPalazzo ("Mr. DelPalazzo") and his son, Vincent DelPalazzo.  Counsel informed Judge

---

[1] Although the Court vacated the *pending* deadlines in the initial Scheduling Order on June 2, 2020 (*see* Doc. No. 18), by that point, the discovery deadline had already passed.

Heffley that they believed discovery would be complete by the end of the year.  However, neither party moved for an extension of the deadlines in the Amended Scheduling Order.

Thus, in the first nine months that this case was before Judge Marston, the parties allowed two discovery deadlines to pass without completing discovery or seeking amendment, cancelled two settlement conferences with Judge Heffley because they failed to take discovery, and were unsuccessful at a third settlement conference because they needed additional discovery. Up until this point, it had appeared that the parties were mostly in agreement and equally at fault for delays in the case.

### B.       *The Court Repeatedly Intervenes to Move Discovery Along.*

On January 28, 2021—after the Amended Scheduling Order's deadlines for discovery, summary judgment, *Daubert* motions, and motions *in limine* had passed—Judge Marston held another telephone status conference with counsel.  At that conference, Ms. Damavandi stated that she had been busy with trials in November and December, which prevented the parties from scheduling the depositions of Mr. DelPalazzo and his son, but those depositions were now scheduled for early February 2021.  The Court emphasized that Ms. Damavandi should have informed the Court that she needed additional time, instead of waiting for the Court to *sua sponte* schedule a status conference.  The Court then ordered the parties to file a joint motion to extend the case management deadlines and demonstrate good cause for granting the extension.

*Two weeks later*, on February 12, 2021, the parties filed a joint motion to extend the deadlines in the Amended Scheduling Order.  (Doc. No. 36.)  Correspondence between counsel shows that defense counsel sent a draft motion to Plaintiff's counsel on February 4, 2021, but Ms. Damavandi did not respond until February 11, 2021, despite multiple follow up emails and a phone call from defense counsel.  (*See* Doc. No. 38-1 at 17–19.)  On February 17, 2021, the Court denied that motion for failure to demonstrate good cause.  (Doc. No. 37.)  However, the

denial was without prejudice, and the Court ordered the parties to file any renewed motion(s) by February 19, 2021.  (*Id.*)

On February 19, 2021, Defendant renewed its motion to amend the scheduling order. (Doc. No. 38.)  For the first time, defense counsel split from Ms. Damavandi stating, "Frankly, this case has been plagued by scheduling problems and difficulty obtaining discovery and cooperation *from the plaintiff*, all while the defense has been overly accommodating as a matter of professional courtesy and in light of the COVID-19 pandemic."  (*Id.* at 4 (emphasis added).) Specifically, Defendant asserted that Mr. DelPalazzo and/or his counsel were consistently late in responding to written discovery, that Mr. DelPalazzo's deposition had been noticed and cancelled at least two times, and that Vincent DelPalazzo's deposition had been noticed and cancelled at least four times.  (Doc. No. 38 at 4–6.)  Ms. Damavandi, on behalf of her client Mr. DelPalazzo, did not join Defendant's renewed motion nor did she file her own motion.  (*Id.* at 6.)

Three days later, the Court held another status conference with counsel.  During the conference, the Court chastised the parties for failing to raise the underlying scheduling issues during the prior conferences.  The Court then ordered that Mr. DelPalazzo's deposition be scheduled for March 2, 2021.  At the end of the conference, the Court emphasized that if there were any future issues related to scheduling, the parties should immediately inform the Court and not wait until the relevant deadlines had passed.

After the conference, the Court issued a Second Amended Scheduling Order, which set a new discovery deadline of March 29, 2021.  (Doc. No. 39.)  As a result, the parties' settlement conference with Judge Heffley was once again rescheduled.  (Doc. Nos. 40 & 41.)

4

### C. The Court Grants Defendant's Motion to Dismiss Counts II through VII of the Second Amended Complaint as Unopposed.

On March 2, 2021, the Court granted as unopposed Defendant's motion to dismiss Counts II through VII of the Second Amended Complaint. (Do. No. 42.)  As the Court explained, Defendant filed the motion on June 30, 2020 (Doc. No. 22), but Plaintiff had not filed *any* response in the intervening *eight months*.

Plaintiff filed a motion to reconsider this order on March 16, 2021, the deadline for such a motion. (*See* Doc. No. 46.)  Although the motion "incorporate[d] by reference" an "accompanying Memorandum of Law," no memorandum was filed, and the motion itself provided no argument or justification for reconsideration. (*See id.*)  For that reason, on March 19, the Court directed Plaintiff's counsel to "file your memorandum by close of business today." Counsel did not file the memorandum or respond to this correspondence from the Court.

On March 23, 2021, the Court held another status conference with counsel. (*See* Doc. No. 49 at 1 n.1.)  In response to the Court's inquiry as to why no memorandum had been filed, Ms. Damavandi stated, for the first time, that she has not electronically filed any documents with the Court, that she only recently became barred in this Court, that her colleague (presumably, Mr. Nurick) had been filing the documents in this case by sending them via email to the Clerk's office, and that in response to this most recent filing, the Clerk's office had for the first time informed them that this was not the proper practice.  Despite this lengthy response, Ms. Damavandi failed to explain how she was able to file the motion to reconsider on March 16, 2021, and why she had not submitted the memorandum to Chambers via email after receiving the Court's March 19, 2021 request.  At the end of the conference, the Court again ordered Ms. Damavandi to email a copy of the memorandum to Chambers and opposing counsel within five

minutes.  She did not.[2]  In addition to disobeying a Court order, Ms. Damavandi's actions left the Court questioning the truthfulness of her assertion during the conference that the memo was complete.

       **D.**      ***Mr. DelPalazzo Calls the Court to Request a Status Update.***

During the March 23, 2021 conference, the Court also addressed a voicemail that it received from Mr. DelPalazzo.  In the message, Mr. DelPalazzo asked the Court for an update on the status of his case, explaining that his "attorney won't give [him] a call back," "has not been in touch in weeks," and that he did not "know where else to turn."  Mr. DelPalazzo explained that this lack of communication was particularly frustrating because he had paid tens of thousands of dollars to the Nurick Law Group, LLC for their representation in this case.

When confronted about these issues at the conference, Ms. Damavandi stated that counsel was communicating with Mr. DelPalazzo only in writing.  The Court ordered her to send an email to Mr. DelPalazzo addressing the situation by close of business that day.  Ms. Damavandi then informed the Court, for the first time, that her firm intended to file a motion to withdraw as counsel.[3]  The Court expressed its frustration that she had not raised the issue earlier—despite multiple status conferences and repeated warnings from the Court that the Court expected counsel to provide *early* notice of potential scheduling issues.

---

[2] For this reason, the Court denied Plaintiff's motion for reconsideration.  (*See* Doc. No. 49.)

[3] Although Ms. Damavandi's partner, Mr. Nurick, withdrew from the case on March 9, 2021, the notice did not mention the issues surrounding the firm's representation, nor did it suggest that the Nurick Law Group, LLC intended to file a motion to completely withdraw as Plaintiff's counsel.  To the contrary, the notice stated that "Catherine Damavandi will continue to serve as lead counsel for the Plaintiff."  (Doc. No. 44.)

### E.    *Plaintiffs' Counsel Serves Discovery Requests the Final Day of Discovery.*

As mentioned above, the final deadline for discovery in this case was March 29, 2021. (*See* Doc. No. 39 at ¶ 2.)  At 5:10 p.m. on that date, Ms. Damavandi, for the first time, served discovery requests on defense counsel, including 20 interrogatories, 29 requests for admission, and 38 requests for production of documents.  (*See* Doc. No. 58 at 9–41.)  She also noticed three depositions, including a Rule 30(b)(6) deposition of Defendant's corporate designee, who was supposed to be knowledgeable on 22 different topics.  (*Id.* at 42–49.)

The requests, which could not be answered within the discovery period, and notices of deposition, which could not be taken within the discovery period, were improper, and on Defendant's motion, the Court quashed them.  (*See* Doc. No. 66.)

### F.    *The Court Issues an Order to Show Cause.*

On March 25, 2021, just a few days before Plaintiff's counsel finally served discovery requests for the first time in this case, the Court issued an Order to Show Cause, directing Ms. Damavandi and Mr. Nurick to show cause why the Court should not sanction or otherwise discipline them for failing to comply with Court orders, for demonstrating a lack of candor in communications with the Court, *see* Pa. R. Prof. Conduct 3.3(a), for failing to promptly and reasonably communicate with their client, *see* Pa. R. Prof. Conduct 1.4(a) & (b), and for failing to diligently, competently, and zealously prosecute this action on behalf of their client, *see* Pa. R. Prof. Conduct 1.1 & 1.3.  (*See* Doc. No. 50 at 6.)  The Court also ordered Ms. Damavandi to verbally communicate with Mr. DelPalazzo about the status of the case.  (Doc. No. 52.)

#### 1.    Counsel Responds to the Show Cause Order.

On March 30, 2021, Ms. Damavandi and Mr. Nurick filed a written response to the Show Cause Order.  (*See* Doc. No. 54.)  In that response, counsel claimed Mr. DelPalazzo, opposing counsel, and even the weather, were responsible for the myriad of issues raised by the Court.

First, they claimed Mr. DelPalazzo was responsible for the communication problems, asserting that "[f]rom almost the beginning of the representation, there were concerns about Plaintiff's lack of communication with Counsel on non-payment of outstanding legal fees." (*Id.* at 1–2.)  Focusing on the three-month stretch between December 2020 and February 2021, they stated that Mr. DelPalazzo was behind on his legal fees and that there were discussions about him retaining new counsel in this case.  (*Id.* at 2–3.)  Likewise, because Ms. Damavandi believed Mr. DelPalazzo was seeking "new counsel, all communications initiated by Counsel with Plaintiff were done through e-mail."  (*Id.* at 2.)

As for the scheduling issues and repeated discovery delays, counsel stated that some of the delays in scheduling depositions "were caused by inclement weather, which impacted work schedules" and by defense counsel's "issuance of deposition notices without confirming the deponents' or opposing counsel's availability."  (*Id.* at 4–5.)  These excuses, however, only address the discovery delays between December 2020 and February 2021.  As for counsels' failure to bring discovery issues to the Court's attention, Ms. Damavandi claimed that she was "concerned about bringing many of these issues to the attention of the Court for fear of waiving the attorney-client privilege."  (*Id.* at 5.)  The Court is perplexed by this claim, and in any event, finds it a poor excuse for failing to inform us that Plaintiff had failed to meet the discovery deadline yet again.

Last, as to counsels' failure to file a memorandum in connection with the motion for reconsideration, Ms. Damavandi and Mr. Nurick repeat their earlier assertion that until March 2021, they had filed all papers via email to the Clerk of Court.  (*Id.* at 5.)  In March, however, the Clerk told them that this was inappropriate and that only confidential documents should be filed

via email.  Counsel does not explain why they failed to email Chambers a copy of the
memorandum as requested by the Court.[4]

Notably, counsels' written response does not address counsels' failure:  (1) to serve *any*
discovery requests before March 29, 2021, despite the Court's repeated assertions that we would
not again extend the deadline for taking discovery, (2) to respond to Defendant's motion to
dismiss during the eight months that it was pending, or (3) to appropriately communicate with
the Court about, among other things, their intention to withdraw as counsel in this case, their
inability to comply with the case management deadlines, and their ECF filing troubles.

## 2.  <u>The Court Holds a Show Cause Hearing.</u>

On April 5, 2021, the Court held a hearing on the Show Cause Order.  (*See* Doc. No. 61.)
Ms. Damavandi and Mr. Nurick were present and represented by Attorney Robert Tintner.
(Draft H'rg. Tr. at 1:10–2:24 (Mr. Tintner explaining that he was in attendance to object if the
Court's questions touched on privileged matters).)  Mr. DelPalazzo also attended the hearing.
(*Id.* at 3:10–13.)  During the hearing, the Court tried to shed light on Plaintiff's counsels'
confounding actions throughout the case.

First, the Court asked why counsel failed to file a response to Defendants' motion to
dismiss.  Ms. Damavandi took credit for the error, admitting that she had been "less than
diligent" on the matter.  (*Id.* at 5:14–16.)  She explained that although she has "evidence of

---

[4] Ms. Damavandi asserts that she asked the Clerk to file a copy of the memorandum on March 19,
2021.  To support this claim, she has submitted a copy of her letter to the Clerk with the elusive
memorandum attached.  (*See* Doc. No. 54-1 at 18–24.)  Although the letter and memorandum are dated
March 19, there is no evidence that counsel submitted the memo on March 19, and even if we accepted
that it was submitted on March 19, that does not show that the memo was drafted on *March 16* when the
motion for reconsideration was filed, nor does it explain why Ms. Damavandi failed, at the very
minimum, to call Chambers and explain that she was experiencing issues filing.  Finally, this letter in no
way explains why Ms. Damavandi failed to email a copy of the memo to Chambers at the conclusion of
the March 19 status conference as directed by the Court.

research from July the 10th, 2020," she "did not follow up to make sure that that response had appeared on the docket."  (*Id.* at 5:14–22.)  Later in the hearing, she confirmed that she had a response ready to be filed on July 10 and did not realize that she had forgotten to file it until the Court's order granting the motion to dismiss was issued in February 2021.  (*Id.* at 17:5–21; *see also id.* at 18:22–19:15 ("What I am trying to articulate is we were aware that there was a pending motion to dismiss and we believe that there was a response filed.").)

Turning to the missing memorandum on the motion for reconsideration, Ms. Damavandi told the Court that the memorandum was written on March 16, 2021, the date that she filed the motion.  (*Id.* at 8:4–8.)  When the Court questioned why Ms. Damavandi failed to send a copy of the memo to Chambers as directed, she responded, "You honor, I apologize to the Court.  I am not here to give excuses for why I failed to do something.  So I am just here to state that it was not filed as of record, that I should have followed up on it, and I did not do that."  (*Id.* at 8:19–23.)

Ms. Damavandi similarly acknowledged that she did not serve discovery requests until March 29, 2021.  (*Id.* at 10:4–11.)  When asked why she waited to serve her requests until the day of the most recent discovery deadline—a deadline the Court had repeatedly said it would not extend—Ms. Damavandi stated that in February 2021, she was contacted by an attorney who she believed was going to take over the case.  (*Id.* at 11:9–20.)  Although that attorney never entered his appearance, Ms. Damavandi viewed the interaction as showing that Mr. DelPalazzo no longer wanted their representation.  (*Id.*)  Ms. Damavandi was unable to provide any explanation for failing to take discovery before February 2021.  (*Cf. id.* at 27:3–10 (Mr. Tintner conceding that the undisclosed attorney-client privilege issue was not an explanation for the response not being filed or for discovery not being taken).)

Next, the Court questioned Ms. Damavandi about her right to practice before this Court, asking whether she was barred and appropriately appearing in the Eastern District of Pennsylvania.  Again, her answers were less than encouraging:

> THE COURT: . . . You have been a member of this Court this entire time?
>
> MS. DAMAVANDI:  No, Your Honor.
>
> THE COURT:  When did you become a member of this Court?
>
> MS. DAMAVANDI:  Maybe June of this year—of last year, I am not sure.[5]
>
> THE COURT: You are not sure?
>
> MS. DAMAVANDI:  I am not sure of the date, because . . . I think the old procedure it was you come into court and you were sworn in. . . .  This was by mailing.

(*Id.* at 13:25–14:12.)

When asked generally about the firm's representation of Mr. DelPalazzo, Mr. Nurick responded that he had "very, very limited involvement in the matter," and that he was only listed as counsel of record because Ms. Damavandi was not an electronic filer in this Court.  (*Id.* at 6:4–12.)  In June 2020, Mr. Nurick learned that Mr. DelPalazzo had stopped paying his legal bills, and he encouraged Ms. Damavandi to withdraw her representation.  (*Id.* at 6:12–15.)  But "she continued to work on the matter," and because she was lead counsel, Mr. Nurick "deferred to her as to when she was going to withdraw."  (*Id.* at 6:14–20 (explaining that that was his only involvement in this matter).)  Despite his minimal oversight in this case, Mr. Nurick praised Ms. Damavandi as an honest and trustworthy colleague:  "I have learned literally without a blink of

---

[5] As we stated previously, the case was removed to this Court on December 2, 2019.  (Doc. No. 1.)  And Ms. Damavandi has actively participated in the federal litigation since at least January 2, 2020.  (*See* Doc. No. 6 at 14 (Ms. Damavandi's signature on Plaintiff's Amended Complaint).)

an eye when I ask her something, I get the truth." (*Id.* at 14:18–15:13 (stating in the same breath that "I can continue to rely on Catherine," and that "I don't know what happened here, because again, minimal involvement."); *see also id.* at 16:7–13 (describing Ms. Damavandi as "a brilliant litigator . . . I have never seen anybody quite like it in almost 25 years of law.  I don't know what happened here.  Ms. Damavandi is, frankly, the only one that can answer for that"); *id.* at 16:13–17 ("I know that I have learned over my . . . 5 or 6 years of interaction with her[ ] that literally if she says it, it's word, and so I don't know what happened.  I just can rely on Ms. Damavandi at this point."); *id.* at 38:1–4 ("Standing here today, I believe her 100 percent.  She has never mislead me, ever in five years.  Every time she said she has done something, she has done something.").)

Finally, the Court turned to Mr. DelPalazzo, who expressed his own frustrations with counsel.  He stated that he believed he had been misled and wished his attorneys had held a conference with him before he signed a retainer to explain the potential costs of the case if it went to trial.  (*Id.* at 21:2–8.)  He also noted that throughout 2020, he asked his attorneys what needed to be done, but "it just seemed like [he] never got an answer of why it just kept getting postponed or they never turned anything over."  (*Id.* at 21:12–14.)

Throughout the hearing, the Court expressed its disbelief about counsel's actions and repeatedly asked for an explanation.  (*See, e.g.*, *id.* at 15:17–23 ("I find this just unfathomable. [I] don't understand what is going on here."); *id.* at 16:2–6 ("I am not trying to get into anybody's individual life, but to me there has got to be an explanation for this type of behavior because this is not proper representation."); *id.* at 21:25–22:10 ("I held this hearing because I was hoping there was an explanation to what I have—a pattern that I have seen in this particular case, to allow you the opportunity to given me some information as to why we are here today,

12

and what has, you know, been going on.").)  But Ms. Damavandi just kept saying that she did not

"want to give any excuses for what [she] did" and that she "should have been more diligent."

(*See, e.g.*, *id.* 16:23–25.)

## II.   SANCTIONS

### A.      *Sanctions are Warranted.*

"Among the implied and incidental powers of a federal court is the power to discipline

attorneys who appear before it."  *In re Prudential*, 278 F.3d at 188 (quotation marks omitted).  A

court has the inherent authority to impose sanctions against an attorney who has acted "in bad

faith, vexatiously, wantonly, or for oppressive reasons."  *Chambers v. NASCO, Inc.*, 501 U.S. 32,

45–46 (1991); *see also In re Prudential*, 278 F.3d at 181 ("[A]n award of fees and costs pursuant

to the court's inherent authority to control litigation will usually require a finding of bad faith.");

*cf. United States v. Seltzer*, 227 F.3d 36, 41–42 (2d Cir. 2000) ("When a district court invokes its

inherent power to impose attorney's fees or to punish behavior by an attorney in the actions that

led to the lawsuit or conduct of the litigation, which actions are taken on behalf of a client, the

district court must make an explicit finding of bad faith. . . .  But, when the district court invokes

its inherent power to sanction misconduct by an attorney that involves that attorney's violation of

a court order or other misconduct that is not undertaken for the client's benefit, the district court

need not find bad faith before imposing a sanction under its inherent power."); *Spencer v.

Steinman*, No. 2:96–CV–1792 ER, 1999 WL 33957391, at *2–3 (E.D. Pa. Feb. 26, 1999)

(explaining that a finding of bad faith is not required before the court issues nonmonetary

sanctions pursuant to its inherent authority).

An attorney "shows bad faith by delaying or disrupting the litigation or by hampering

enforcement of a court order."  *Chambers*, 501 U.S. at 46 (quotation marks omitted); *see also*

*B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002) ("Here, regardless of whether

defense counsel's behavior constituted bad faith per se, we readily find that counsel's reckless and knowing conduct in this case was tantamount to bad faith and therefore sanctionable under the court's inherent power."); *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) ("[T]he district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct. . . .  Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose."); *Spencer*, 1999 WL 33957391, at *1 (considering whether the attorney acted "knowingly or intentionally").

"The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers*, 501 U.S. at 45–46.

Here, the Court finds Plaintiffs' counsel knowingly ignored Court orders and delayed proceedings to the detriment of their client and the Court and in violation of the Pennsylvania Rules of Professional Conduct.

### 1.     Counsels' Actions Harmed Mr. DelPalazzo's Case.

Ms. Damavandi missed vital deadlines in this case and ignored multiple court orders in violation of Pennsylvania Rules of Professional Conduct 1.1 and 1.3.  *See* Pa. R. Prof. Conduct 1.1 ("A lawyer shall provide competent representation to a client.  Competent representation requires," among other things, the "thoroughness and preparation reasonably necessary for the representation."); Pa. R. Prof. Conduct 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client.").  This conduct undeniably negatively affected her client's ability to litigate his claims.

14

By failing to timely file a response to the motion to dismiss or to file a memorandum in connection with the motion to remand, the Court was compelled to dismiss all but one of Plaintiff's claims on procedural grounds.  And by failing to propound *any* discovery requests or notice *any* depositions until the *last day* of the *third* discovery deadline set by the Court, Ms. Damavandi essentially failed to prosecute Mr. DelPalazzo's sole remaining claim.[6]  *See* Pa. R. Prof. Conduct 1.1, cmt. 5 ("Competent handling of particular matters . . . includes adequate preparation."); Pa. R. Prof. Conduct 1.3, cmt. 1 ("A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor.  A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf."), cmt. 5 ("Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed.").

---

[6] The Court previously expressed our concern with counsels' seeming failure to promptly and reasonably communicate with Mr. DelPalazzo about his case.  *See* Pa. R. Prof. Conduct 1.4(a) ("A lawyer shall . . . keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests for information."), (b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.").  During the show cause hearing, Ms. Damavandi and Mr. Nurick explained that their communications were limited because Mr. DelPalazzo told them he intended to find new counsel, and in February 2021, a new attorney did, in fact, reach out to them.  (*See* Draft H'rg. Tr. at 11:9–20.)  They also disputed Mr. DelPalazzo's assertion that they had failed to return his calls, testifying that the firm had no missed calls from Mr. DelPalazzo.  (*See* Doc. No. 54 at 2–4.)  Although we continue to have reservations about the effectiveness of communications in this case, we do not find counsels' conduct related to this issue sanctionable given the confusion surrounding Mr. DelPalazzo's representation.

2.    **Counsels' Actions Unreasonably Delayed Proceedings and Harmed the Court.**

In addition, Ms. Damavandi has not lived up to the expectations that this Court has for the attorneys appearing before us.  In addition to missing deadlines, it appears that Ms. Damavandi practiced for six months before this Court before being barred here.  She also repeatedly failed to comply with Court orders, most notably the Court's direction for her to submit the memorandum in connection with the motion to remand and to diligently conduct discovery.  Finally, the Court cannot help but question Ms. Damavandi's candor during conferences with the Court about the status of discovery and her inability to email Chambers a memorandum in support of the motion to reconsider.  To this day, the Court has seen no evidence to support Ms. Damavandi's assertion that the memorandum was drafted on March 16, 2021, when she submitted the motion to reconsider.  (*See* Doc. No. 46.)

During the show cause hearing, Ms. Damavandi provided little to no explanation for her misconduct, saying only that she should have been more diligent, that Mr. DelPalazzo had not paid his legal bills on time, and that in February  2021, she believed Mr. DelPalazzo had new counsel and she was confused about how to file documents on ECF.  The Court understands that Mr. DelPalazzo's failure to timely pay his legal bills placed Ms. Damavandi in a difficult position, but the appropriate course of action would have been to move to withdraw early in the case, not allow case deadlines to pass without taking *any* action.  Moreover, Ms. Damavandi's troubles with ECF in February 2021 can provide no excuse for her conduct before that date, nor does it explain why Ms. Damavandi failed to communicate her troubles with Chambers via phone or email.  Finally, until new counsel entered an appearance for Mr. DelPalazzo, Ms.

Damavandi *and Mr. Nurick*[7] remained counsel of record, and as such, they were *required* to comply with Court orders, to be candid with the Court when asked about delays, and to diligently litigate this action.  Their failure to do so unnecessarily extended the proceedings in this case, requiring multiple court conferences and discovery extensions until the Court refused to extend the deadlines further.  *See* Pa. R. Prof. Conduct 3.2 ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."); *see also Jacovetti Law, P.C. v. Shelton*, No. 20-00163-JGW, 2020 WL 1491320, at *5 (E.D. Pa. Mar. 27, 2020) ("One of the basic reasons that courts have the inherent power to issue sanctions is to ensure compliance with their orders. Here, if the Court did not sanction [plaintiffs' counsel], that failure would imply that [counsel's] conduct wasn't all that bad.  It was all that bad, though, especially because it came at the tail end of Thomas's history of disregarding deadlines.").

*     *     *

In sum, it is not any single act, but a pattern of inappropriate conduct, that has led to sanctions in this case.  *See In re Prudential*, 278 F.3d at 189–91 (affirming imposition of sanctions under § 1927 where the magistrate judge "based his finding of the requisite bad faith and vexatious conduct on the totality of the campaign [the attorney] waged during the course of this litigation, not upon any single maneuver"); *Jacovetti Law, P.C.*, 2020 WL 1491320, at *5 ("[T]he Court is still of the view that some monetary sanction is appropriate here," even though the attorney's conduct did not impact the defendants.  "There is no doubt that the Court issued a valid order, Thomas had knowledge of it, and he disobeyed it.  Under the circumstances, the

---

[7] Although we recognize Mr. Nurick's limited involvement in this case, he remained Plaintiff's counsel until March 9, 2021, when he withdrew his representation.  Up until that point, he was listed on the docket as joint lead counsel with Ms. Damavandi; he received notice of all filings on ECF, along with communications with Chambers; and he filed documents on Mr. DelPalazzo's behalf.  In short, he was part of the case, had notice of the misconduct that occurred throughout it, and should have known the detriment his firm's representation was causing to Mr. DelPalazzo.

Court can and in this case should impose a financial sanction.").  Counsels' repeated missteps in this case suggest a knowing course of conduct that goes beyond the realm of recklessness and is tantamount to bad faith.  Accordingly, sanctions are appropriate.

### B.    The Court Must Set an Appropriate Sanction.

Having found sanctions are warranted in this case, we must next decide the appropriate sanction.  In determining an appropriate sanction, the court must "seek[ ] the least significant sanction that will correct or deter similar conduct from [the offending attorney] in the future." *Taggart v. Deutsche Bank Nat'l Tr. Co.*, CIVIL ACTION NO. 20-5503, 2021 WL 2255875, at *18 (E.D. Pa. June 3, 2021) (quotation marks omitted); *see also Jacovetti Law, P.C.*, 2020 WL 1491320, at *5 ("A court should generally consider a wide range of alternative possible sanctions and choose a sanction that is the minimum that will serve to deter the undesirable behavior adequately.")

With this caution in mind, and after considering the circumstances surrounding this case in their entirety, the Court will require Nurick Law Group, LLC to pay $500 to the Court's registry as a sanction for counsels' misconduct.  *See Jacovetti Law, P.C.*, 2020 WL 1491320, at *5 (ordering counsel to pay $50/day for every day that he was in violation of the court's order to file a disclosure statement, which totaled $1600); *see also, e.g.*, *Orr v. McGinty*, No. 1:17-CV-1280 (GLS/TWD), 2022 WL 2440064, at *2 (N.D.N.Y. July 5, 2022) ("Plaintiff's counsel is directed to pay . . . a sum of five hundred dollars and 00/1.00 ($500.00) payable to the Clerk of the Court as a sanction for violating the Court's protective orders."); *Schmude v. Sheahan*, No. 00 C 4580, 2004 WL 1157841, at *1, *6 (N.D. Ill. May 21, 2004) (denying motion to vacate sanctions order that required the attorney to pay a fine of $5,000 and disgorge $301,321.29 in improperly obtained attorney's fees where the attorney sought and obtained "numerous awards of attorney fees, as improperly appointed counsel" despite the federal court's "repeated

admonitions that further litigation in the state court would be in contravention of the federal

court's jurisdiction and improper" and where the attorney violated his duty of candor to the

court).

The law firm shall also return any attorneys' fees paid by Mr. DelPalazzo for work

related to:  (1) the Second Amended Complaint (Doc. No. 21), which included the counts that

were later dismissed because Ms. Damavandi failed to file the response to the motion to dismiss

(*see* Doc. No. 22), (2) any research or response to the motion to dismiss the Second Amended

Complaint that was drafted but never filed, (3) the memorandum in support of the motion for

reconsideration (Doc. No. 46), (4) the Court's Order to Show Cause (Doc. No. 50), (5) Mr.

DelPalazzo's discovery requests and deposition notices, which were served on the last day of

discovery, and (6) the conferences with the Court on January 28, 2021, February 22, 2021, and

March 23, 2021.  *See United States v. Small*, No. 03-CR-1368 (ARR), 2005 WL 8162421, at *1

n.1 (E.D.N.Y. Nov. 30, 2005) ("As the Second Circuit has recently reaffirmed, federal courts

possess inherent power to police the conduct of attorneys who appear before them, to impose

sanctions for attorney misconduct, to inquire into attorney/client fee arrangements, and, if

warranted, to order attorneys to return fees paid by clients."); *cf. Schlesinger v. Teitelbaum*, 475

F.2d 137, 141 (3d Cir. 1973) ("[I]n its supervisory power over the members of its bar, a court has

jurisdiction of certain activities of such members, including the charges of contingent fees."); *In

re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 102 (2d Cir. 2003) ("Fee forfeiture is

an equitable remedy that requires careful consideration of all the relevant circumstances.");

*Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1111 (7th Cir. 1982) ("Even when the validity of the

fee contract itself has not been challenged by the parties, it is within the court's inherent power

of supervision over the bar to examine the attorney's fee for conformance with the reasonable standard of the Code of Ethics.").

These sanctions are not more than necessary to rectify the harm done to Mr. DelPalazzo and the Court. *Cf. Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir. 1995) (vacating the district court's sanctions order to the extent it required counsel to return to the client all fees and costs incurred in the action because "[t]he wrong done was to the court" and "[t]here are no findings adequate to support a conclusion that the client was wronged"). And they will hopefully deter this law firm and other attorneys from practicing before this Court before being barred here, ignoring Court orders, missing case management deadlines, and approaching Court conferences with a lack of candor. In short, the sanctions reinforce the requirement that attorneys diligently manage their cases and honestly communicate with the Court.

The Court wishes the circumstances were different and sanctions were not necessary, but diligence and candor are two ethical principles on which the practice of law rely. The Court is not saying that counsel lack those qualities. To the contrary, Mr. Nurick's impassioned defense of his colleague suggests that Ms. Damavandi is an honest individual and a talented litigator. Since the show cause hearing, Ms. Damavandi has timely filed a response to the motion for summary judgment (Doc. No. 72), a motion to compel (Doc. No. 67), and her additional motions for reconsideration (Doc. Nos. 76, 81). But this change in behavior is too little, too late for Mr. Delpalazzo.

## III.   CONCLUSION

As a sanction for improper conduct in this case, the Nurick Law Group, LLC shall pay $500 to the Court's General Fund and disgorge attorneys' fees as outlined in this Memorandum. Counsel shall submit an accounting to the Court of all fees billed to and collected from Mr.

DelPalazzo in connection with this case, so the Court can determine the exact amount of fees to be returned.

     An appropriate order follows.